IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS JOSEPH CAIRNS, II, | ) | CASE NO. 1:14 CV 1671 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.    Nature of the case and proceedings**

Before me[1] is an action by Dennis Joseph Cairns, II under 42 U.S.C. § 405(g) for

judicial review of the final decision of the Commissioner of Social Security denying his

applications for disability insurance benefits and supplemental security income.[2] The

Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my

---

[1] ECF # 16. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 12.

[4] ECF # 13.

initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9]

**B.      Background facts and decision of the Administrative Law Judge ("ALJ")**

Cairns, who was 38 years old at the time of the administrative hearing,[10] was diagnosed with HIV and Kaposi's sarcoma in early 2008.[11]

The ALJ, whose decision became the final decision of the Commissioner, found that Cairns had the following severe impairments: human immunodeficiency virus (HIV), with history of Kaposi's sarcoma; and depressive disorder, NOS.[12]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Cairns's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can never climb ladders, ropes, or scaffolds; can frequently climb ramps or stairs; can occasionally balance, kneel or crouch; can never crawl; should avoid all exposure to hazards such as operational control of moving machinery and unprotected

---

[5] ECF # 9.

[6] ECF # 14.

[7] ECF # 19 (Cairns's brief); ECF # 25 (Commissioner's brief).

[8] ECF # 20-1 (Cairns's charts); ECF # 25-1 (Commissioner's charts).

[9] ECF # 20 (Cairns's fact sheet).

[10] Transcript ("Tr.") at 37, 39, 200.

[11] *Id.* at 387-88.

[12] *Id.* at 29.

heights; and should avoid commercial driving. Additionally, the claimant is limited to work involving simple, routine, and repetitive tasks.[13]

The ALJ decided that this RFC precluded Cairns from performing his past relevant work as an automobile sales person, a home furnishings sales person, a telephone solicitor, a banquet steward, and a comedian.[14]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Cairns could perform.[15] The ALJ, therefore, found Cairns not under a disability.[16]

## C.    Issues on judicial review and decision

Cairns asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Cairns presents the following issues for judicial review:

- The ALJ erred by failing to properly evaluate the opinions from treating physicians Drs. Avery and Koon, thereby failing to support the residual functional capacity determination by substantial evidence.

- The ALJ's credibility findings are unsupported by substantial evidence because the ALJ erred in analyzing the required factors when assessing Plaintiff's credibility.

---

[13] *Id.* at 30.

[14] *Id.* at 37.

[15] *Id.* at 38.

[16] *Id.*

- The ALJ erred in mechanically applying the Medical-Vocational Guidelines, despite the existence of significant non-exertional impairments.[17]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A.    Standards of review**

*1.    Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[18]

---

[17] ECF # 19 at 1.

[18] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

-4-

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[19] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[20]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.      *Treating physician rule and good reasons requirement***

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[21]

---

[19] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[20] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[21] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[22]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[23] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[24]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[25] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[26] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[27] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[28]

---

[22] *Id.*

[23] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[24] *Id.*

[25] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[26] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[27] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[28] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[29] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[30] The court noted that the regulation expressly contains a "good reasons" requirement.[31] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[32]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[33] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[34] The former confers a substantial, procedural right on

---

[29] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[30] *Id.* at 544.

[31] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[32] *Id.* at 546.

[33] *Id.*

[34] *Id.*

the party invoking it that cannot be set aside for harmless error.[35] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[36]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[37] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[38] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[39] *Blakley v. Commissioner of Social Security*,[40] and *Hensley v. Astrue*.[41]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[42] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[35] *Id.*

[36] *Id.*

[37] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[38] *Id.* at 375-76.

[39] *Rogers*, 486 F.3d at 242.

[40] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[41] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[42] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[43] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[44] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[45]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[46] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[47] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[48] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[43] *Id.*

[44] *Id.*

[45] *Rogers*, 486 F.3d at 242.

[46] *Gayheart*, 710 F.3d at 376.

[47] *Id.*

[48] *Id.*

and the treatment reports.[49] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[50]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[51]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[52] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[53] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[54] or that objective medical evidence does not support that opinion.[55]

---

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Rogers*, 486 F.3d 234 at 242.

[53] *Blakley*, 581 F.3d at 406-07.

[54] *Hensley*, 573 F.3d at 266-67.

[55] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[56] The Commissioner's *post hoc* arguments on judicial review are immaterial.[57]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[58]

- the rejection or discounting of the weight of a treating source without assigning weight,[59]

---

[56] *Blakley*, 581 F.3d at 407.

[57] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[58] *Blakley*, 581 F.3d at 407-08.

[59] *Id.* at 408.

-11-

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[60]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[61]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[62] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[63]

The Sixth Circuit in *Blakley*[64] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[65] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[66]

---

[60] *Id.*

[61] *Id.* at 409.

[62] *Hensley*, 573 F.3d at 266-67.

[63] *Friend*, 375 F. App'x at 551-52.

[64] *Blakley*, 581 F.3d 399.

[65] *Id.* at 409-10.

[66] *Id.* at 410.

-12-

In *Cole v. Astrue*,[67] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[68]

## B.    Application of standards

### 1.    *Weight accorded to opinions of treating sources*

The first issue here essentially turns on whether subsequent improvement of the claimant's condition is a "good reason" for discounting a treating source's earlier functional opinion. Because such documented improvement does constitute a "good reason" for not according the prior treating source opinion controlling weight, I will conclude that the Commissioner's decision here is supported by substantial evidence and so should be affirmed.

Cairns argues that the ALJ erred by not giving controlling weight to: (1) a September, 2010 functional opinion from Henry Koon, M.D., an oncologist who had treated Cairns since 2009;[69] and (2) a September, 2010 functional opinion from Ann Avery, M.D., an infectious disease specialist who had treated Cairns since 2008.[70] Cairns contends that the major reason

---

[67] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[68] *Id.* at 940.

[69] ECF # 19 at 16.

[70] *Id.* at 17.

-13-

for the functional limitations outlined by Drs. Koon and Avery is his lower left leg edema and resulting pain and that this condition has actually gotten worse over time, not improved.[71]

Cairns is correct in noting that the ALJ's prime reason for giving little weight to the functional opinions of Drs. Koon and Avery is the "record showing that [Cairns's] symptoms have improved significantly [since 2010] and [the evidence that] his lower extremity swelling was related to increased activity and time on his feet."[72] In that regard, the ALJ previously observed during his recitation of the medical history that Dr. Avery found Cairns's lower extremity edema "is significant especially if he misses chemotherapy."[73] Moreover, the ALJ also noted that Dr. Koon, who managed Cairns's chemotherapy, concluded in August, 2009 that Cairns's swelling "improved with treatment."[74] In addition, Dr. Koon found in April, 2010 that although Cairns had intermittent swelling of his legs, his symptoms had markedly improved since he started treatment.[75] In June, 2010 Dr. Koon observed that despite having problems with lower extremity swelling for two years, Cairns was extremely active, and "runs 20 miles" for exercise.[76] Similarly, Dr. Koon noted in September, 2010 that Cairns

---

[71] *Id.* at 17-18.

[72] Tr. at 34.

[73] *Id.* at 33.

[74] *Id.* at 32 (citing record).

[75] *Id.*

[76] *Id.*

continued to have leg swelling, but the swelling was improved when he received chemotherapy.[77]

In addition to locating the above notations in the record from prior to September, 2010 when the functional opinions were given, the ALJ also examined the record from after that date. The newer observations, as was the case from prior to September, 2010, show that Cairns's lower leg swelling remained intermittent and without significant effect on his ability to function. Cairns told Dr. Koon in February, 2011 that he was not experiencing swelling, and in October, 2011 Cairns was seen by Dr. Avery, who also found he had no complaints but was working out and taking testosterone in an effort to "get bigger."[78] Dr. Avery further observed in March, 2012 that Cairns had not had chemotherapy in over a year and that he had started Lasix, which was working "great" at controlling his edema.[79]

In sum, as the Commissioner asserts, the record actually cited and discussed by the ALJ in this case supports the ALJ's conclusion that Cairns's edema responded well to treatment prior to September, 2010, when the treating source opinions were given. Moreover, the more recent treatment notes show that Cairns's edema has been even less of a problem than in the past, with no difficulties reported for substantial periods of time, and new treatments offering excellent results in controlling this symptom.

---

[77] *Id.* at 33.

[78] *Id.*

[79] *Id.* (citing record).

Furthermore, as the Commissioner also observes, the record is clear, and the ALJ has cited specifically to that record, that Cairns has been able to engage in extensive physical activities despite intermittent recurrences of edema. As noted above, the ALJ recounted Cairns's continuation of a regular and rigorous exercise regimen that included running 20 miles even after two years of having lower extremity edema, exercising up to four hours per day, and maintaining his parents' house and yard.[80]

Finally, as the above evidence indicates, Cairns has not shown that his edema was actually getting worse, contrary to the findings of the ALJ.[81] As the Commissioner observes, most of the proof Cairns cites for worsening edema comes from the earliest days of his treatment[82] and as such are contradicted by later evidence of his running 20 miles, working out four hours per day, and bulking up at the gym – all while having intermittent episodes of lower extremity swelling that itself could be controlled with medication.

I also observe that in formulating the RFC here, the ALJ had recourse to the opinions of two state agency reviewing physicians – Rachel Rosenfeld, M.D., and Teresita Cruz, M.D. Both opinions were given after the opinions of Drs. Koon and Avery,[83] and the ALJ accorded both state agency opinions "weight," although he further concluded that "subsequent

---

[80] ECF # 25 at 15 (citing record).

[81] ECF # 19 at 20.

[82] ECF # 25 at 15-16 (citing record).

[83] Dr. Rosenfeld opined in November, 2010 (Tr. at 55-57) and Dr. Cruz in May, 2011 (*id.* at 89-90).

evidence shows the claimant is more limited than was determined by the state agency consultants."[84]

Thus, the reasons given by the ALJ for not according controlling weight to the functional opinions of two treating sources are "good reasons" for such a lesser weight, and the decision of the Commissioner in this respect is, therefore, supported by substantial evidence.

## 2. *Credibility finding*

The ALJ here found that objective evidence did not support the level of severity in Cairns's physical symptoms that he alleged. The ALJ determined that "[g]iving [Cairns] every benefit of the doubt, I have credited his testimony as much as the objective medical evidence of record allows."[85]

Cairns argues first that the ALJ erred by measuring his statements against the RFC instead of against the record as a whole.[86] In fact, as is noted above, the ALJ measured Cairns's claims against the totality of the medical evidence and not against the ultimate RFC finding. This approach is substantiated by the discussion of the evidence that immediately follows – a discussion largely reviewed above wherein the ALJ reviewed the evidence with an emphasis on those portions of the record bearing directly on Cairns's claims of physical limitations. As detailed above, the ALJ found substantial evidence for the conclusion that

---

[84] *Id.* at 34.

[85] *Id.* at 31.

[86] ECF # 19 at 20.

Cairns's physical condition was neither as severe as he claimed nor did it preclude him from engaging in significant physical activities. Thus, there is substantial evidence for finding that Cairns was not fully credible in his claims of physical limitation when assessed against the objective evidence of the record.

In that regard, Cairns argues next that any discounting of his complaints on the basis that he has a history of regular exercise is misplaced because that exercise is of minimal intensity, consisting merely of "stretching exercises" and "light cardio."[87] But, that characterization is contradicted by evidence, cited above, that Cairns runs extensively, exercises for hours at a time, and participates in a regimen to "bulk up" while working out at the gym. Such documented activities are well beyond the *de minimis* social activities with an elderly parent that Cairns now asserts make up the extent of his physical activity.[88]

Finally, Cairns contends that in discounting his claims of physical limitation the ALJ ignored the fact that the regular "ebbs and flows" of chemotherapy will leave him weak and tired while he is undergoing chemotherapy and the edema is under control, and alternatively subject him to the effects of his edema when it returns during those periods when the chemotherapy is in abatement.[89] But, as the Commissioner points out according to the most recent evidence Cairns has gone for periods of more than a year without any chemotherapy,

---

[87] *Id.*

[88] *Id.*

[89] *Id.* at 20-21.

-18-

his edema controlled by Lasix; and he has the energy to regularly work out.[90] Thus, the facts do not support Cairns's argument that he must necessarily be subject to a perpetual cycle of stop-and-start chemotherapy with no relief available for alternating disabilities of fatigue or edema caused by that process.

In sum, substantial evidence supports the decision of the ALJ to discount Cairns's credibility as to the limiting functional effects of his condition.

### 3.      *The hypothetical*

Lastly, Cairns maintains that the ALJ erred by not including additional limitations in the hypothetical posed to the VE that would have incorporated the functional opinions of Drs. Koon and Avery.[91] But, as noted above, because the ALJ did not err in declining to accord these functional opinions controlling weight, no error occurred in not incorporating those opinions into the hypothetical propounded to the VE. As the Commissioner notes, the ALJ is not required to include in an RFC, and so by extension in the hypothetical, any limitation not found to be supported by substantial evidence.[92]

---

[90] ECF # 25 at 17-18.

[91] ECF # 19 at 21.

[92] *See*, *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

**Conclusion**

For the reasons stated, substantial evidence supports the finding of the Commissioner that Cairns had no disability. The denial of Cairns's applications is therefore affirmed.

IT IS SO ORDERED.


Dated: 7/28/15                                    s/ William H. Baughman, Jr.
                                                  United States Magistrate Judge